IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

UNITED STATES OF AMERICA         *   Docket No. 6:16-CR-0032
                                 *
                                 *
VERSUS                           *   February 23, 2016
                                 *
                                 *
WADE BERGERON                    *   Lafayette, Louisiana

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

REPORTER'S OFFICIAL TRANSCRIPT OF THE PLEA HEARING
BEFORE THE HONORABLE PATRICIA MINALDI,
UNITED STATES DISTRICT JUDGE

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**A P P E A R A N C E S**

FOR THE GOVERNMENT:  ALEXANDER C. VAN HOOK
                     U.S. Attorney's Office
                     300 Fannin Street, Suite 3201
                     Shreveport, LA 71101
                     Email:  alexander.van.hook@usdoj.gov
                     Phone:  (318) 676-3600
                     Fax:    (318) 676-3660


                     TONA BOYD
                     U.S. Dept. of Justice, Civil Rights Div.
                     950 Pennsylvania Avenue N.W.
                     Washington, DC  20530
                     Email:   tona.boyd@usdoj.gov
                     Phone:   (202) 514-3204
                     Fax:     (202) 514-8336


FOR THE DEFENDANT:   DUSTIN CHARLES TALBOT
                     Federal Public Defender's Office
                     102 Versailles Blvd., Suite 816
                     Lafayette, LA  70501
                     Email:  dustin_talbot@fd.org
                     Phone:  (337) 262-6336
                     Fax:    (337) 262-6605


**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

```
REPORTED BY:        DEIDRE D. JURANKA, RPR
                    611 Broad Street, Suite 267
                    Lake Charles, Louisiana 70601
                    Email:  dd_juranka@lawd.uscourts.gov
                    Phone:  (337) 214-6669
                    Fax:    (337) 437-3390
```

|     |     |
| --- | --- |
| 1   | COURT PROCEEDINGS |
| 2   | (Call to order of the court.) |
| 3   | THE COURT:  Good morning.  You may be seated. |
| 4   | MR. VAN HOOK:  Good morning, Your Honor. |
| 5   | THE COURT:  Good morning. |
| 6   | MR. VAN HOOK:  Your Honor, my name is Alec Van |
| 7   | Hook.  I'm the first assistant United States attorney. |
| 8   | I'm here on behalf of the United States Attorney |
| 9   | Stephanie Finley, and with me at counsel table is Tona |
| 10  | Boyd.  She's representing the Department's civil rights |
| 11  | division. |
| 12  | THE COURT:  Good morning. How would you like to |
| 13  | handle these cases?  Your plea packets are a little |
| 14  | different than I'm used to so bear with me. |
| 15  | MR. VAN HOOK:  Yes, Your Honor. |
| 16  | THE COURT:  But you can call the cases in the order |
| 17  | that you like. |
| 18  | MR. VAN HOOK:  Okay.  Your Honor, the first case -- |
| 19  | we'll just call them in numerical order, then.  The |
| 20  | first case is United States versus Wade Bergeron which |
| 21  | has been assigned Criminal No. 6:16-0032.  Your Honor, I |
| 22  | know we sent your office copies of the Rule 11 package |
| 23  | by e-mail on Friday. |
| 24  | THE COURT:  Yes, and I did look at them. |
| 25  | MR. VAN HOOK:  I would offer at this point a copy |

```
 1    that has your name and the case number on all the pages
 2    in case you need that.
 3         THE COURT:  No.  I have copies now.  Thank you.
 4    All right, sir.
 5         MR. TALBOT:  Good morning, Your Honor.  Dustin
 6    Talbot and with me today is my client, Wade Bergeron.
 7         THE COURT:  Mr. Talbot, have you gone over the plea
 8    packet with Mr. Bergeron?
 9         MR. TALBOT:  Yes, I have, Your Honor.
10         THE COURT:  Do you feel like he understands it?
11         MR. TALBOT:  Yes, I do, Your Honor.
12         THE COURT:  Have you talked with him about how the
13    sentencing guidelines may affect his sentence?
14         MR. TALBOT:  Yes, I have.
15         THE COURT:  You feel like he understands that?
16         MR. TALBOT:  Yes, Your Honor.
17         THE COURT:  Thank you.  Mr. Bergeron, please raise
18    your right hand.
19              (Oath is administered.)
20         THE COURT:  Mr. Talbot has told me that he's gone
21    over the plea packet with you.  Is that correct?
22         THE DEFENDANT:  Yes, it is.
23         THE COURT:  Do you feel like you understand it?
24         THE DEFENDANT:  To the best of my ability.
25         THE COURT:  That's sort of a strange answer.
```

1          THE DEFENDANT:  I don't understand -- I mean, I
2     understand it but I just -- you know, some of it is
3     above me.
4          THE COURT:  Well, some of it's above me, too, so
5     don't feel bad.
6          THE DEFENDANT:  Thank you.
7          THE COURT:  And he's told me that he's talked with
8     you about how the sentencing guidelines may affect your
9     sentence.  Is that correct?
10         THE DEFENDANT:  Yes.
11         THE COURT:  Do you feel like you understand that?
12         THE DEFENDANT:  Yes.
13         THE COURT:  The first document I'd like to talk
14    with you about is entitled the Elements of the Offense,
15    and I'm told that this morning you want to plead guilty
16    to deprivation of rights under color of law.
17         THE DEFENDANT:  Yes, Your Honor.
18         THE COURT:  The elements of that offense are,
19    number one -- this is what the Government would have to
20    prove beyond a reasonable doubt before you could be
21    convicted of this offense.  One, that you acted under
22    color of law; two, that you deprived a person whose
23    initials are A.D. in the United States of a right
24    protected or secured by the Constitution or laws of the
25    United States which includes the right to be free from

```
 1          excessive force; third, that you acted willfully; and
 2          four, that the offense resulted in bodily injury to the
 3          victim or involved the use of a dangerous weapon.  Do
 4          you understand what the Government would have to prove?
 5               THE DEFENDANT:  Yes.
 6               THE COURT:  Let's turn next to the Affidavit of
 7          Understanding of Maximum Penalty and Constitutional
 8          Rights.  This document tells me -- tells you and me the
 9          penalty that you face when convicted of this offense and
10          the rights that you give up when you enter a guilty
11          plea.  Let's talk about the penalties first.  When
12          convicted of this offense you face penalty of not more
13          than ten years in prison, a fine of not more than
14          $250,000 or both, a term of supervised release of not
15          more than three years, and a special assessment of $100
16          which is mandatory.  Do you understand the penalty that
17          you face?
18               THE DEFENDANT:  Yes.
19               THE COURT:  The penalty contains a term of
20          supervised release which means, if you are incarcerated
21          on this offense, when you are released from
22          incarceration your release will be supervised by a
23          probation officer to whom you will have to report on a
24          regular basis.  And there will be conditions placed on
25          that release, things that you cannot do and things that
```

1   you must do.  It's important that you abide by the terms
2   of your supervised release because, if you don't, your
3   release can be revoked, you can be sent back -- come
4   back to court, your release could be revoked, you could
5   be sent back to prison; and if that happens, the
6   possibility exists you could actually end up serving
7   more time in prison than the maximum penalty for this
8   offense.  Do you understand that?
9           THE DEFENDANT:  Yes.
10          THE COURT:  If your guilty plea is accepted here
11  this morning, a probation officer is going to do an
12  investigation into your background and the particular
13  circumstances of this offense.  Once that investigation
14  is complete, the facts learned in that investigation
15  will be applied to the sentencing -- will be applied to
16  the sentencing guidelines and that will yield a range of
17  sentence that Congress says is appropriate for you under
18  these circumstances.  I must consider that range, but if
19  I think it's inappropriate I can give you something less
20  or something more as long as I remain within the bounds
21  of the law and have a good reason for deviating from the
22  sentencing guidelines.  Do you understand that?
23          THE DEFENDANT:  Yes.
24          THE COURT:  This packet contains a Plea Agreement
25  which outlines in detail and in writing the obligations

1 that you have to the Government because of this plea and
2 the obligations the Government has to you because of
3 this plea.  I'm not going to read it verbatim to you
4 because I know that you have read it and your lawyer has
5 talked with you about it.  Is there anything about that
6 Plea Agreement that you don't understand or have any
7 questions about?
8 　　　　THE DEFENDANT:  I understand it.
9 　　　　THE COURT:  Now I'm going to talk with you about
10 the Waiver of Indictment.  You are charged in this case
11 by Bill of Information, which is a document that an
12 assistant U.S. attorney signs.  You have the right to
13 have this case heard by a grand jury, a group of lay
14 people who would hear the case and decide whether you
15 should be held over for trial.  But you also have the
16 right to waive that indictment, which usually happens to
17 expedite matters in my experience.  But you do have that
18 right to be heard by a grand jury.  Do you understand
19 what it means by waiving the indictment and being
20 charged by a Bill of Information?
21 　　　　THE DEFENDANT:  Yes.
22 　　　　THE COURT:  Let's go over the Stipulated Factual
23 Basis, which is called something different, Stipulation
24 in Support of Guilty Plea.  This indicates to me that
25 you were employed as a deputy sheriff in the narcotics

1    division at the Iberia Parish Sheriff's Office and you
2    participated in a shakedown on or about April 29, 2011.
3    The person whose initials are A.D., a pretrial detainee,
4    was escorted and handcuffed to the jail's chapel, which
5    doesn't have a surveillance system in it and is not
6    monitored by jail staff.  He was handcuffed, compliant,
7    surrounded by officers, including you.  With the
8    understanding that you and the other officers would
9    unlawfully use force to assault A.D., you and the other
10   officers, including two fellow IPSO deputies from the
11   narcotics division, struck A.D. with batons while he was
12   handcuffed.  There was no -- and you knew there was no
13   legitimate law enforcement purpose for the force that
14   was used on him, and it resulted in bodily injury to
15   that person.  Is that what happened?
16            THE DEFENDANT:  Yes.
17            THE COURT:  To the charge of deprivation of rights
18   under color of law, how do you plead?
19            THE DEFENDANT:  Guilty.
20            THE COURT:  Are you satisfied with the
21   representation that Mr. Talbot has provided to you?
22            THE DEFENDANT:  Yes, I am.
23            THE COURT:  I'll accept your guilty plea and will
24   set sentencing for --
25            MR. VAN HOOK:  Your Honor, if I may.

1       THE COURT:  Yes.
2       MR. VAN HOOK:  I'm just going through the Rule 11
3  colloquy and I don't believe that the Court advised the
4  defendant of his right to plead not guilty and his right
5  to a jury trial.
6       THE COURT:  I didn't.  You're right.
7       MR. VAN HOOK:  Or his right to be represented by
8  counsel.
9       THE COURT:  I got it.
10      MR. VAN HOOK:  Yes, Your Honor.
11      THE COURT:  Like I said, it's a different --
12      MR. VAN HOOK:  Your Honor, I know this paperwork
13 is -- some of the paperwork is out of order for me as
14 well, Your Honor.  While I'm here, since I've
15 interrupted you, I did also fail to go ahead and offer
16 and introduce the original Rule 11 package.
17      THE COURT:  We'll take that now.  And,
18 Mr. Bergeron, I do want to add that you have the right
19 to have a jury trial.  I have a broken rib so if I stop
20 every now and then, that's because of that.  You have
21 the right to have a jury trial, and we would select 12
22 people to hear your case and all 12 of those jurors
23 would have to agree that the Government had proved its
24 case beyond a reasonable doubt before you could be
25 convicted of any offense; but you have the right to

1  waive that jury trial and plead guilty.  Do you
2  understand that?
3        THE DEFENDANT:  Yes.
4        THE COURT:  If you went to trial, you would have
5  the right to see the witnesses called against you and to
6  ask them questions; but when you plead guilty you give
7  up that right.  Do you understand that?
8        THE DEFENDANT:  Yes.
9        THE COURT:  You have a privilege against
10 self-incrimination which means no one can force you to
11 testify against yourself, but when you plead guilty you
12 are testifying against yourself.  Do you understand
13 that?
14       THE DEFENDANT:  Yes.
15       THE COURT:  If you went to trial and you were
16 convicted, you would have the right to appeal the
17 verdict of guilt; but when you plead guilty you give up
18 your right to appeal the verdict of guilt.  Do you
19 understand that?
20       THE DEFENDANT:  Yes.
21       THE COURT:  You have the right to be represented at
22 all times by counsel of your choice or by
23 court-appointed counsel if you cannot afford your own.
24       Are you retained or appointed, Mr. Talbot?
25       MR. TALBOT:  Appointed, Your Honor.

1      THE COURT:  Mr. Talbot is here with you now.  If
2  you decided you wanted to go to trial, he would
3  represent you during trial.  And if you were convicted,
4  someone would be appointed to represent you on appeal.
5  But when you plead guilty you give up your right to
6  trial and to appeal the verdict of guilt so you also
7  give up your right to be represented during those
8  proceedings.  Do you understand that?
9      THE DEFENDANT:  Yes.
10      THE COURT:  With the addition of those rights that
11  I've told you about, do you want to change your plea in
12  any way?
13      THE DEFENDANT:  No, I do not.
14      THE COURT:  Then I will set sentencing for --
15      MR. VAN HOOK:  Your Honor, if I may, I'm not
16  positive I heard the right to confront and cross-examine
17  witnesses.
18      THE COURT:  I think I did say that.
19      MR. VAN HOOK:  Did you say that?
20      THE COURT:  Yeah.
21      MR. VAN HOOK:  Thank you, Your Honor.
22      THE COURT:  Set sentencing for 5/24/16 at
23  10:00 a.m.  Any objection to releasing the defendant on
24  his -- the bond that currently exists?
25      MR. VAN HOOK:  Your Honor, there's no bond.  At

1  this point, Your Honor, the Government has no objection
2  to the defendant being released.  The only condition
3  we'd ask be imposed that he not possess a firearm.
4        THE COURT:  Please don't do that.  Okay.
5        MR. TALBOT:  Your Honor, one housekeeping matter.
6  We don't normally ask for this.  Could I ask that the
7  Plea Agreement be placed under seal in this case?  This
8  particular plea agreement has much more extensive
9  language about cooperation.
10       THE COURT:  Any objection to that?
11       MR. VAN HOOK:  Your Honor, the Government does not
12 join in that.  There's not a basis that we're aware of
13 for the Plea Agreement not to be open, and it's the
14 policy of the Department to have open proceedings.  The
15 courtroom's not closed, and the Plea Agreement should
16 not be sealed.
17       THE COURT:  I'll seal it.
18       MR. TALBOT:  Thank you, Your Honor.
19       THE COURT:  Thank you.
20              (Proceedings adjourned.)
21
22
23              * * * * * *
24
25

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**

```
 1                       CERTIFICATE
 2
 3      I hereby certify this 7th day of April, 2016, that the
 4   foregoing is, to the best of my ability and understanding, a
 5   true and correct transcript of the proceedings in the
 6   above-entitled matter.
 7
 8                                   S/Deidre D. Juranka, RPR
                                     Official Court Reporter
 9
10
...
25
```

**Deidre D. Juranka, RPR**
**United States Court Reporter**
**Western District of Louisiana**